# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| John Allen Farr, | Case No 3:16-cv-2668-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| South Carolina Electric and Gas Company, | |
| Defendant. | |

This matter is before the Court on the Report and Recommendation ("R. & R.") of the Magistrate Judge (Dkt. No. 43) recommending that the Court grant in part and deny in part Defendant's motion for summary judgment (Dkt. No. 31). The Court adopts the R. & R. with respect to (1) the equitable tolling of the statute of limitations and (2) Plaintiff's failure to accommodate claim. The Court otherwise rules on Defendant's motion for summary judgment as set forth below.

## I. Background and Relevant Facts

Plaintiff John Allen Far brings the following four claims against his former employer, Defendant South Carolina Electric and Gas ("SCE&G") pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12102, *et seq.* ("ADA"): (1) disparate discipline; (2) hostile work environment; (3) failure to accommodate; and (4) retaliation. (Dkt. No. 1-1.) The Court adopts the facts as outlined at length in the R. & R. (Dkt. No. 43 at 2–8.)

## II. Legal Standard

### A. Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

### B. Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Discussion

### A. Timeliness

The Magistrate Judge recommended that the statute of limitations relevant to Plaintiff's claims be equitably tolled. (Dkt. No. 43 at 10.) No party has objected to the Magistrate Judge's recommendation, and the Court finds that the Magistrate Judge has correctly applied the controlling law to the relevant facts to the extent that Plaintiff's claims were untimely filed due to processing delays at the Equal Employment Opportunity Commission ("EEOC").

### B. Disparate Discipline

Plaintiff has alleged that he was subject to disparate discipline[1] on three separate occasions: (1) when he received a corrective action in August 2013 due to failure to maintain his truck adequately (the "August 2013 Corrective Action"); (2) when he was reprimanded in July 2014 for using almost all of his paid time off ("PTO") by that date and for requesting PTO with too little notice (the "PTO Reprimand"); and (3) when he was terminated in December 2014.

To establish a prima facie case of disparate discipline, Plaintiff must allege facts to show: (1) that he is disabled; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against [him] were more severe than those enforced against other similarly-situated employees. *Iskander v. Dep't of Navy*, 116 F. Supp. 3d 669, 679 (E.D.N.C. 2015) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)).

---

[1] Plaintiff has styled the claims as "Disparate Treatment" in the Complaint but alleges that he was punished more severely than other similarly-situated but non-disabled employees for the same alleged misconduct. The Court has therefore construed Plaintiff's claims as disparate discipline claims.

Along with these elements, demonstration of an adverse employment action is necessary element of a discrimination claim under the ADA. *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 430 (4th Cir. 2015) (a plaintiff must have suffered an adverse employment action of some kind to establish a disability-based discrimination claim); *Sterling v. Tenet*, 416 F.3d 338, 345 (4th Cir. 2005) ("Regardless of the route a plaintiff follows in proving a [discrimination] action, . . . the existence of some adverse employment action is required"); *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (dismissing claim due to the absence of an adverse employment action and noting that Congress did not intend for anti-discrimination laws "to provide redress for trivial discomforts endemic to employment"). "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).

PTO Reprimand

The admonishment Plaintiff received in July 2014 for what management perceived to be his inappropriate use of PTO cannot support a disparate discipline claim because it does not constitute an adverse employment action. On July 30, 2014, Plaintiff received a rating of "Does Not Meet" in the area of "operational effectiveness" on his mid-year performance evaluation. (Dkt. No. 31-4 at 14-15.) The evaluation indicates that in one area of operational effectiveness, management of PTO, Plaintiff had poorly managed his PTO by requesting time off with little or no notice and by using almost all of his PTO in the first half of the year. (*Id.*) Regardless of the parties' quibbles about the accuracy or fairness of that evaluation, Plaintiff has not made allegations which create a genuine dispute of material fact about whether he was subject to an adverse employment action. Plaintiff has not alleged any facts which show that this evaluation had any negative effect on the terms, conditions, or benefits of his employment. *See Adams*, 789

F.3d at 431 (performance evaluations, without any impact on the terms and conditions of employment, do not rise to the level of an adverse employment action); *James,* 368 F.3d at 377 (explaining that a downgrade in a performance evaluation could effect a term condition, or benefit of employment but is only actionably where an employer later uses the evaluation as a basis to detrimentally alter the terms of employment). Defendant's motion for summary judgment is therefore granted with respect this disparate discipline claim.

August 2013 Corrective Action

Plaintiff alleges that he was subject to disparate discipline in violation of the ADA when Defendant imposed the August 2013 Corrective Action. The Magistrate Judge has outlined the facts relevant to this incident in detail, and those facts do not appear to be in dispute. (Dkt. No. 43 at 4-6.) In the summer of 2013, Plaintiff sought treatment for his opioid addiction. When he returned to work on July 25, 2013, he was told he needed to remain on leave until he passed a fitness-for-duty examination. Plaintiff returned to work about a month later, on August 23, 2013, after passing his fitness-for-duty examination and receiving letters of clearance confirming that he could safely perform his job duties, work around dangerous equipment or machinery, and operate a company vehicle. On the day he returned, Plaintiff met with some of his superiors to discuss his doctor's assessment and recommendations for his continued employment, which included, among other things, his commitment to refrain from using controlled substances and to attend follow-up visits with his physician at three-month, six-month, and one-year intervals.

Within just fifteen minutes of the first meeting, Plaintiff was invited to a second meeting with other superiors and his union representative. One supervisor, Kissam, assured Plaintiff that this meeting had nothing to do with the previous meeting. Plaintiff was handed a corrective action form and advised that he was being disciplined because his truck had "become so trashed

and cluttered that it became unsafe to drive," in violation of Life Rule X – Housekeeping for Motor Vehicles. (Dkt. No. 31-8 at 44-45.) Plaintiff was informed that he would no longer have access to a company vehicle and would be transferred to the storeroom/warehouse as a result of the corrective action. Plaintiff's job title, pay, and benefits remained the same. Plaintiff received a second corrective action on October 30, 2013 for "story telling" about the first corrective action (the "October 2013 Corrective Action"). (Dkt. No. 31-8 at 46). In the notes for improvement, the October 2013 Corrective Action says that Plaintiff should "not run his mouth and stir things up." (*Id.*) Plaintiff has alleged that these events constitute disparate discipline in violation of the ADA.

First, the Court has considered whether the August 2013 Corrective Action constitutes and adverse employment action. The "reassignment of job duties is not automatically actionable." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006). Whether a reassignment constitutes a materially adverse action is situation-specific and should be judged from the perspective of a reasonable person in the plaintiff's position in light of all the circumstances. (*Id.*) (finding jury could reasonably conclude that reassignment from forklift operator to track laborer was materially adverse because work as a track laborer was more arduous and dirtier that forklift operation which carried a higher level of prestige and required more qualifications). While the mere fact that a plaintiff is unhappy with his new assignment is insufficient to show an adverse action, Plaintiff alleges that he was both denied use of a company vehicle and transferred to the warehouse for having a cluttered truck. A reasonable jury could find that Defendant took an adverse employment action when it banned Plaintiff from using a company vehicle and reassigned him to the warehouse because these sanctions were restrictions that could impact his future opportunities for promotion or professional development. *See James*,

368 F.3d at 376 ("The question is whether there was a change in the terms or conditions of his employment which had a 'significant detrimental effect' on his opportunities for promotion or professional development.").

Having found that Plaintiff has created a genuine dispute of material fact about whether he was subject to an adverse employment action, the Court now considers whether Plaintiff has established a prima facie case of disparate discipline by alleging facts which show: (1) that he is disabled; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against [him] were more severe than those enforced against other similarly-situated employees. *Iskander*, 116 F. Supp. 3d at 679. Under the ADA, a "disability" includes: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being "regarded as" having such an impairment. 42 U.S.C. § 12102(1).

In the R. & R., the Magistrate Judge determined Plaintiff was regarded by Defendant SCE&G as having an impairment so is entitled to protection under the ADA. (Dkt. No. 43 at 11-12.) Defendant objected to the Magistrate Judge's conclusion, arguing that the relevant decision-makers were not aware of Plaintiff's opioid addiction. (Dkt. No. 48 at 5.) Kissam's statement to Plaintiff at the meeting in which the August 2013 Corrective Action was imposed that *this* meeting had *nothing to do* with the prior meeting creates a genuine dispute of material fact about whether those imposing the discipline, including Kissam, had knowledge of Plaintiff's disability.[2] Plaintiff has therefore plead facts sufficient to create a genuine dispute of material

---

[2] Defendant and Plaintiff have extensively briefed the precise extent of each supervisor's knowledge and decision-making authority. Plaintiff has alleged facts sufficient to show that Kissam had knowledge that the prior meeting was about a sensitive topic, otherwise, there would be no need for Kissam to assure Plaintiff that the second meeting had nothing to do with the first meeting. The Court need not consider the

fact about whether Defendant regarded him as being "disabled" for the purposes of his disparate discipline claim.

Plaintiff has also alleged facts sufficient to show that the conduct he engaged in was comparable to the conduct of employees outside the protected class – in this case, Plaintiff himself prior to his treatment for opioid addiction – and that he was disciplined more severely following his employer's discovery of his disability. Plaintiff alleged that the condition of his truck had always been relatively cluttered and messy but he was disciplined for this conduct only – and immediately – upon arriving back to work following his fitness-for-duty examination. Plaintiff's allegation is bolstered by the statement of one of his supervisors, Dr. Hudson, that typically, if a problem with a vehicle was identified, the employee would first be consulted and advised to resolve the problem. (Dkt. No. 33–8 at 8.)

Finding that Plaintiff has met his initial burden of pleading a prima facie case of discrimination, the Court applies the burden shifting framework from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). "The *McDonnell Douglas* burden-shifting framework applies to employment claims under the ADA." *Johnson v. Baltimore City Police Dep't*, No. CIV.A. ELH-12-2519, 2014 WL 1281602, at *5 (D. Md. Mar. 27, 2014).

> Under the *McDonnell Douglas* proof scheme, the plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the [adverse] employment action. If the defendant meets this burden of production, the presumption created by the *prima facie* case "drops out of the picture," and the plaintiff bears the ultimate burden of proving that she has been the victim of intentional discrimination.

---

knowledge of other supervisors because Kissam's knowledge, implied by this statement, is sufficient to allow this claim to proceed, and Plaintiff's other claims fail for independent reasons.

*Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir.1995) (applying this framework to a Title I discrimination claim).

Defendant claims to have articulated a legitimate, nondiscriminatory explanation to support a finding that unlawful discrimination did not cause the adverse employment action – namely, that management's discovery that Plaintiff's truck was in poor condition just happened to coincide with Plaintiff's return from his fitness-for-duty evaluation. A reasonable jury could conclude that this explanation is not legitimate in light of the timing of the discovery and the severity of the sanction imposed. Kissam stated in his deposition that he believed it might take "anywhere from a year to two years" for him to restore Plaintiff to his truck privileges due to Plaintiff's violation of Life Rule X.[3] The severity of the discipline imposed indicates that Defendant took Life Rule X very seriously. However, Plaintiff's statement that his truck has always been in relatively poor condition and Mr. Hudson's statement that an employee would typically be consulted and advised to remedy such an issue in the first instance suggests that Defendant may have decided to take Life Rule X more seriously when Plaintiff returned from treatment for an opioid addiction and that the adverse employment action was a pretext for disparate discipline. For this reason, Defendant's motion for summary judgment is denied with respect to Plaintiff's disparate discipline claim.[4]

---

[3] Defendant's safety concern with a messy or cluttered vehicle is that an object could become lodged under the brake pedal, endangering Plaintiff and others.

[4] The Court has not considered the extent to which an employer like Defendant may impose restrictions, such as drug testing, on an employee who is a recovering addict in order to manage its own risk and liability. Defendant has argued only that its decision to bar Plaintiff from using the company truck and to transfer him to the warehouse was due to his violation of Life Rule X. Moreover, Kissam assured Plaintiff at the August 23, 2013 meeting that their meeting about his violation of Life Rule X had nothing to do with the meeting Plaintiff had just walked out of concerning the terms of his employment following his return from treatment.

December 2014 Termination

The facts relevant to Plaintiff's December 2014 termination are not in dispute. On December 9, 2014, an employee reported an AR-15 rifle in plain view on the passenger seat of Plaintiff's personal vehicle which was parked on Company property. Plaintiff's vehicle was unlocked, and the firearm was fully loaded. Upon being questioned by two supervisors, Mr. Hudson and Mr. Simpson, Plaintiff stated that he had a handgun in the vehicle that was also fully loaded. Plaintiff was sent home that day pending an investigation. The same evening, Plaintiff called his immediate supervisor, Willie Evans, and asked whether his co-worker, Robin Mackey, had reported his firearm violation to management. When Mr. Evans would not disclose to Plaintiff who had reported the firearm in his vehicle, Plaintiff told Mr. Evans that he would "blame Robin for it anyway." (Dkt. No. 31-9 at 26.) Plaintiff was terminated on December 12, 2014.

As discussed above, to make a prima facie case that he was subject to disparate discipline Plaintiff must allege facts to show: (1) that he is disabled; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against [him] were more severe than those enforced against other similarly-situated employees. *Iskander*, 116 F. Supp. 3d at 679. Plaintiff argues that he has made a prima facie case of discrimination by showing that another employee, Everett Smith, received only a verbal warning when he violated the same company policy. The court has considered whether Plaintiff has alleged facts sufficient to show that the prohibited conduct he engaged in was "comparable in seriousness" to Smith's misconduct.

Defendant's firearm policy allows employees to store firearms in their personal vehicles on company property and requires that the firearms be "concealed in the vehicle" and that vehicles containing firearms remain locked if unattended. (Dkt. No. 33-24 at 15.) Defendant argues that Plaintiff's violation of the policy is more serious because (1) Plaintiff's vehicle was unlocked while Smith's was locked, and (2) Plaintiff's firearms were loaded while Smith's were not.[5] The Company's firearm policy does not require firearms to be stored unloaded, so Defendant's second argument fails. However, the policy's requirement that vehicles used to store firearms should remain locked when unattended is not trivial. Although the policy does not require the firearms to be unloaded, the presence of a loaded firearm in plain view in an unlocked car on Company property presents an obvious safety risk that the policy was designed to prevent. Smith's violation did not create the same safety risk as Plaintiff's because Smith's vehicle was locked. For this reason, the Court finds that Plaintiff has failed to allege facts which show that his violation was comparable in seriousness to Smith's. Even if the distinction between a locked and unlocked vehicle did not establish that Plaintiff's violation was more serious than Smith's, Plaintiff's phone call to his direct supervisor that evening compounded the seriousness of the initial offense because he asked his supervisor to identify the individual who had reported his firearm violation and indicated that he would "blame Robin for it anyway." Considering all the facts and circumstances of Plaintiff's violation, including the phone call that evening in which he made a thinly veiled threat about a co-worker, the conduct Plaintiff engaged in was not comparable in seriousness to Smith's policy violation. Plaintiff has therefore failed to make a prima facie case of disparate discipline based on his December 2014 termination.

---

[5] Plaintiff and Smith each possessed two firearms in their vehicles. (Dkt. No. 31-9 at 14.) Smith's firearms were unloaded, but Smith also had ammunition stored in his vehicle.

## C. Hostile Work Environment

To establish a hostile work environment claim under the ADA, a Plaintiff must allege facts to show that: (1) he is a qualified person with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the conduct was sufficiently severe or pervasive to alter his condition of employment and to create an abusive work environment; and (5) the conduct is imputable on some factual basis to his employer. *Mason v. Wyeth*, 183 F. App'x 353, 360–61 (4th Cir. 2006) (citing *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176–77 (4th Cir. 2001)).

To establish that the conduct was "sufficiently severe or pervasive," Plaintiff must allege "not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." *Fox*, 247 F.3d at 178. When analyzing the objective component, this Court considers the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating rather than being a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance. *Edmonson v. Potter,* 118 F. App'x 726, 730 (2004). The Supreme Court has observed that conduct is sufficiently severe or pervasive to alter the terms and conditions of his employment when a plaintiff alleges facts which show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

In the Fourth Circuit, plaintiffs must "clear a high bar" in order to satisfy the severe or pervasive test, and complaints premised on "rude treatment" or "callous behavior by one's superiors" are not actionable. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (internal citation omitted). The Fourth Circuit has observed that "[w]orkplaces are not always harmonious locales," and concluded that "even incidents that would objectively give rise

to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Id.* at 315. This Court's "task . . . on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion. That is, instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id.* at 316 (quoting *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). The work environment must be "hostile or deeply repugnant," not "merely unpleasant" to be actionable. *Edmonson*, 118 F. App'x at 730.

Plaintiff has asked the Court to consider the following allegations in support of his hostile work environment claim: (1) he was denied permission to drive a company vehicle; (2) he was transferred to the warehouse; (3) he was not allowed to move desks; (4) he was forced to work under people junior to him; (5) he was disciplined for personal computer use; (6) he received a negative mid-year evaluation; (7) statements by management that he "got himself into this mess" and "created the issue"; (8) that he was reprimanded for failing to use his PTO responsibly; (9) pictures of Plaintiff's truck were shown at a safety meeting in a demeaning manner; (10) Defendant allowed rumors of Plaintiff's drug use and violence to "swirl" around Plaintiff; and (11) Plaintiff was belittled by management when he was told that they "needed to keep an eye on him." (Dkt. No. 49 at 2.)

Plaintiff's allegations at (7) and (11) establish that he was subject to statements of annoyance or derision, and such allegations fall short of meeting the "severe and pervasive" standard required for a hostile work environment claim in this circuit. *See Woods v. Boeing Co.*, No. 2:11-cv-02855-RMG, 2013 WL 5308721, at *8 (D.S.C. Sept. 19, 2013) (holding that "expressions of annoyance and impatience are not sufficiently severe or pervasive [so] as to alter a term, condition, or privilege of employment"); *Acosta v. Hilton Grand Vacations Co., LLC*, No.: 4:15-cv-00495, 2017 WL 1173583, at *4 (D.S.C. Mar. 30, 2017) (mere utterance which

to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Id.* at 315. This Court's "task . . . on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion. That is, instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id.* at 316 (quoting *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). The work environment must be "hostile or deeply repugnant," not "merely unpleasant" to be actionable. *Edmonson,* 118 F. App'x at 730.

Plaintiff has asked the Court to consider the following allegations in support of his hostile work environment claim: (1) he was denied permission to drive a company vehicle; (2) he was transferred to the warehouse; (3) he was not allowed to move desks; (4) he was forced to work under people junior to him; (5) he was disciplined for personal computer use; (6) he received a negative mid-year evaluation; (7) statements by management that he "got himself into this mess" and "created the issue"; (8) that he was reprimanded for failing to use his PTO responsibly; (9) pictures of Plaintiff's truck were shown at a safety meeting in a demeaning manner; (10) Defendant allowed rumors of Plaintiff's drug use and violence to "swirl" around Plaintiff; and (11) Plaintiff was belittled by management when he was told that they "needed to keep an eye on him." (Dkt. No. 49 at 2.)

Plaintiff's allegations at (7) and (11) establish that he was subject to statements of annoyance or derision, and such allegations fall short of meeting the "severe and pervasive" standard required for a hostile work environment claim in this circuit. *See Woods v. Boeing Co.,* No. 2:11-cv-02855-RMG, 2013 WL 5308721, at *8 (D.S.C. Sept. 19, 2013) (holding that "expressions of annoyance and impatience are not sufficiently severe or pervasive [so] as to alter a term, condition, or privilege of employment"); *Acosta v. Hilton Grand Vacations Co., LLC*, No.: 4:15-cv-00495, 2017 WL 1173583, at *4 (D.S.C. Mar. 30, 2017) (mere utterance which

engenders offensive feelings in an employee is not sufficiently severe or pervasive to affect the conditions of employment); *Wiggins v. DaVita Tidewater, LLC*, 451 F. Supp. 2d 789, 800 (E.D. Va. 2006) (finding statement that "you have to excuse [the plaintiff], I don't think she took her medication today," and instructing others to monitor or keep an eye on the plaintiff's work was insufficient to support a disability-based hostile work environment claim).

In the same vein, Plaintiff alleges at (9) that photos of his truck were shown at a safety meeting as an example of how not to maintain a company vehicle. Plaintiff alleges that this conduct embarrassed and demeaned him. The law does not forbid an employer from using one employee's failure to comply with a policy (in this case the company's policy for maintaining a clean and safe vehicle) as an example for other employees. While plaintiff may have been embarrassed when images of his messy truck were shown at the meeting, this allegation does not approach the high bar required in this circuit for a plaintiff to establish an actionable hostile work environment claim.

Plaintiff alleges at (10) that Defendant allowed rumors about Plaintiff's drug use to "swirl" around Plaintiff. Plaintiff does not identify the source of the rumors, the content of the rumors, or the frequency with which such rumors circulated. This allegation is so lacking in specificity that is does little to advance Plaintiff's hostile work environment claim. Courts have found that several specific incidents of mockery and ridicule fall short of meeting the "severe and pervasive" standard, so Plaintiff's general allegation that there were rumors at the office about his drug use certainly falls short of this standard. *See Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 331 (N.D.N.Y. 2010) (finding the following conduct was not severe or pervasive when directed to an employee who was addicted to pain medication: attempting to sell the plaintiff Lortab; calling the plaintiff names like "drug addict" and offering him pills on a daily

basis; taping pills to the plaintiff's time card with a mocking note; and leaving a "marijuana cigarette" on the plaintiff's desk).

Plaintiff alleges at (3) and (4) that he was not allowed to move desks and that he was forced to work under people junior to him. For the same reasons discussed above, these allegations fall short of meeting the severe and pervasive standard required to plead a hostile work environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (isolated or genuinely trivial acts constituting ordinary adversities in workplace not actionable).

Plaintiff's allegation at (6) that he received a single poor mid-year performance evaluation likewise fails to meet the "severe and pervasive" standard. *See Shiflett v. GE Fanuc Automation Corp.*, 960 F. Supp. 1022, 1036 (W.D. Va. 1997), *aff'd*, 151 F.3d 1030 (4th Cir. 1998) (holding that "poor performance evaluations" are insufficient to establish a hostile work environment claim).

Plaintiff alleges at (1), (2), (5), and (8), that he was denied use of the company vehicle as a disciplinary measure, that he was disciplined for personal computer use, that he was transferred to the warehouse, and that he was unfairly reprimanded for failing to use his PTO responsibly. These allegations do not, considered individually, establish a disability-based hostile work environment claim. *See Robinson v. Potter*, 2010 WL 4964741, at *6 (D.S.C. Nov. 9, 2010) (allegations of being subjected to underserved discipline, disparate and unfavorable treatment, and a hostile and negative attitude by a supervisor do not rise to the level of being severe or pervasive); *Bell v. Shulkin*, 709 F. App'x 167, 170 (4th Cir. 2017) ("[A]n employer does not engage in harassment because it takes reasonable disciplinary measures").

For the reasons discussed above, Plaintiff's allegations are insufficient, considered in isolation, to state an actionable hostile work environment claim. However, the Court has also considered whether Plaintiff's allegations, taken together, meet the "severe and pervasive" standard. To do so, the Court has considered the frequency and severity of the allegedly discriminatory conduct, whether it was physically threatening or humiliating rather than being a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance. *See Edmonson*, 118 F. App'x at 730. Most of the allegations amount to trivial workplace adversities or statements of annoyance or frustration from management. Nonetheless, a reasonable juror considering Plaintiff's allegations collectively could find that he was subjected to unwelcome conduct, often in the form of disciplinary actions or reprimands from managers, that was based on his disability and that this conduct both altered the conditions of his employment and interfered with his work performance because it permeated his workplace environment. For these reasons, Defendant's motion for summary judgment is denied as to Plaintiff's hostile work environment claim.

### C. Failure to Accommodate

To survive a motion for summary judgment on his failure to accommodate claim under the ADA, Plaintiff must allege facts to create at least a genuine dispute of material fact with respect to the following elements: "(1) that [he] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [his] disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; (4) that the [employer] refused to make such accommodations." *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387, n. 11 (4th Cir. 2001) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). The Magistrate Judge recommended that this Court grant Defendant's motion for summary judgment with respect to Plaintiff's failure to accommodate claim because

Plaintiff did not allege facts which create a genuine dispute of material fact about whether he needed the accommodation of additional paid time off to complete the essential functions of his job. (Dkt. No. 34 at 16-17.) No party has objected to the Magistrate Judge's recommendation, and the Court finds that the Magistrate Judge has correctly applied the controlling law to the facts relevant to this issue. Defendant's motion for summary judgment is granted as to Plaintiff's failure to accommodate claim.

### D. Retaliation

The ADA's retaliation provision provides, in relevant part, "[n]o person shall discriminate against any individual because such individual . . . made a charge . . . under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie retaliation claim under the ADA, a plaintiff must allege facts to create a genuine dispute of material fact about whether (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected conduct and the adverse action. *See A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011).

Plaintiff has alleged that he engaged in protected activity when he filed an EEOC complaint. It is not disputed that Plaintiff informed his employer that he had filed or intended to file an EEOC complaint no earlier than August 4, 2014.[6] (Dkt. No. 33-2 at 47.) Plaintiff has not alleged facts sufficient to show any causal link between his notifying his employer about his EEOC complaint on August 4, 2014, and his termination over four months later on December 12, 2014. The Fourth Circuit has held that a temporal proximity of four months is insufficient alone to show a causal connection. *See, e.g., Pascual v. Lowe's Home Ctrs., Inc.*, No. 05-1847, 2006 WL 2226571 (4th Cir. Aug. 2, 2006) (holding that three to four months between the protected

---

[6] Plaintiff's letter is dated August 4, 2014 at the top and August 8, 2014 by his signature. This outcome of this Court's analysis is the same regardless of the date used.

activity and termination is too long to establish a causal connection by temporal proximity alone).

In the R. & R., the Magistrate Judge reasoned that Plaintiff's allegation that Defendant admonished him for use of his paid time off supported finding a causal connection between Plaintiff's engaging in protected activity and his termination four months later. *See Lettieri v. Equant Inc.,* 478 F.3d 640, 650 ("In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" (quoting *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000)). It is undisputed, however, that Plaintiff was admonished for his allegedly irresponsible use of paid time off at a meeting on July 30, 2014, *before* he notified his employer about his intent to file an EEOC complaint on August 4, 2014. (Dkt. No. 1-1 at 7-8; Dkt. No. 33 at 7-8.) Statements and actions from this July 30, 2014 meeting about Plaintiff's use of his PTO cannot support a causal link between Plaintiff's engaging in a protected activity on August 4, 2014 and his termination on December 12, 2014 because "by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998). For these reasons, the Court finds that Plaintiff has failed to allege facts sufficient to show any causal connection between his filing an EEOC complaint and his termination on December 12, 2014. Defendant's motion for summary judgment is therefore granted with respect to Plaintiff's retaliation claim.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED (Dkt. No. 31) as to Plaintiff's failure to accommodate and retaliation claims. Defendant's motion for summary judgment is also GRANTED as to Plaintiff's disparate discipline claims based on his PTO Reprimand and his December 2014 termination.

Defendant's motion for summary judgment is DENIED as to Plaintiff's disparate discipline claim based on the August 2013 Corrective Action that resulted in his being banned from using the company truck and transferred to the warehouse. Defendant's motion for summary judgment is also DENIED as to Plaintiff's hostile work environment claim.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March  2 1 , 2018
Charleston, South Carolina